No. 34,644

Oscar S. Wagner and Mandelia Hundley, Executors under the Last Will and Testament of Winfield Downey, Deceased, *Appellants*, v. L. J. Downey, *Appellee*.

(99 P. 2d 761)

Opinion filed March 9, 1940.

*W. P. Waggener, O. P. May, B. P. Waggener, Ralph M. Hope,* all of Atchison, and *Louis N. Goessy,* of Kansas City, Mo., for the appellants.

*Karl V. Shawver, Edward H. Coughlin* and *Robert E. Coughlin,* all of Paola, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action to subject the farm upon which defendant lived to payment of a money judgment. Motion was filed

to quash the execution on the ground that the farm was defendant's homestead and that the plaintiffs had waived any alleged purchase-money lien. The motion was sustained and a motion for a new trial overruled. Plaintiffs appeal.

The principal question presented is whether the court erred in holding that the defendant could claim homestead exemption as against the judgment.

On October 10, 1938, the plaintiffs, as executors of the estate of Winfield Downey, deceased, filed an amended petition asking judgment on a promissory note given to the deceased by his son, the defendant, L. J. Downey, on February 3, 1927. The petition alleged that on February 17, 1936, Winfield Downey and his wife, in connection with a property division made in contemplation of a divorce, sold to their son, the defendant, an eighty-acre farm in Miami county, Kansas, for $4,000; that the defendant paid to the mother $2,000 which was in settlement of her property interests in the estate of her husband, and that by payments thereafter made he reduced the debt to his father to $1,173, and on February 3, 1937, executed a promissory note to his father for that amount. The petition further alleged that $130 had subsequently been paid and there was then due on the note $1,043 as principal and $52.50 as interest, which the defendant had refused to pay. Further allegations and the prayer of the petition were as follows:

"Plaintiffs further state that defendant, immediately upon sale and conveyance of said property to him, took full possession thereof as owner and continues in possession and claim of ownership. That by reason thereof and the fact that said note represents and evidences a part of the purchase price of said property, defendant is not entitled to any exemption therein as a homestead as head of a family or in any other character, and that plaintiffs are entitled to a vendor's lien upon said property for the amount due from defendant on said note prior and paramount to any right, claim or interest of defendant and to special judgment thereon against said property.

"Wherefore plaintiffs ask judgment in the sum of $1,095.50, with interest thereon at 10 percent from February 3d, 1938, to date of judgment and for the costs of this action and for a vendor's lien upon said property, prior, superior and paramount to defendant's right, title, claim or interest thereon or thereto and for special judgment therefor and execution thereon."

While the action was pending negotiations for settlement were carried on between the parties and an agreement was reached. In consideration of defendant's agreement to confess judgment, if certain credits and claims which he had were deducted, the plaintiffs agreed to omit all reference to waiver of exemptions and claim for

a lien as set out in the petition. Journal entry embodying this agreement was prepared by plaintiffs' attorney and approved by counsel for defendant. The judgment recited that—

". . . the parties announced in open court that this action be settled by the plaintiffs taking judgment against the defendant in the sum of nine hundred ninety-seven & 88/100 dollars ($997.88), and the defendant waiving any and all claims he may have against the estate of Winfield Downey, deceased, including the specific legacy described in the will."

The judgment entered October 21, 1938, contained no reference to waiver of exemptions or claim for a lien.

About four months thereafter, on February 11, 1939, execution was issued upon the judgment and returned unsatisfied on March 13, 1939. On May 23, 1939, plaintiffs brought proceedings in aid of execution, and the defendant appeared on June 5, 1939, and testified concerning his property. He testified, in substance, that the note was given for the balance due on the place; that he bought the place from his father and mother jointly, and that he had no other property. No order was made on June 5, but on the same day execution was issued and levied upon the farm. On June 7, 1939, the defendant's attorney wrote to the attorney for plaintiffs, stating that the court would hear additional testimony on the matter on the following Monday if that was satisfactory, and if not, at some other near date in the future. Plaintiffs' attorney replied, stating, in effect, that the hearing had been merely a hearing in aid of execution, that the defendant had appeared and answered and that the proceeding was at an end. However, on June 12 the defendant and attorney appeared before the court and cross-examination of L. J. Downey, the defendant, was permitted. Neither plaintiffs nor their attorney appeared. It is not necessary to recite the defendant's further testimony in full. Suffice it to say that he testified that he did not give either his father or mother a note at the time he received the deed and that he also bought from his father a $300 team of horses, wagon, harness, implements and half of the household furniture. He said that no note was asked for at the time and that no note was given until a year later when his father asked for his money, and that the note was for the amount then due on all of the property that had been sold to him. The defendant's mother testified that she did not know whether her husband got a note or not, that the son bought the team, the implements and other things on the farm.

On June 17 defendant filed a motion to quash the levy of execution on the ground that he was head of a family and that the farm was his homestead, and a hearing was held upon this motion on June 26. The motion was supported by affidavits, the plaintiffs objecting to the procedure. The defendant's affidavit not only recited facts showing the place to be a homestead, but also contained the statement that "the judgment mentioned in the execution is not an obligation contracted for the purchase of such premises or the erection of improvements thereon." The defendant also offered transcript of the testimony of the defendant and the testimony of the register of deeds taken on June 12, 1939, to which plaintiffs objected on the ground that the defendant was on the stand on June 5, was not cross-examined at that time, and that no further hearing had been set by the court and no notice of such hearing given to the plaintiffs. A rather lengthy colloquy between the attorneys followed, and plaintiffs' objection to the introduction of the testimony was overruled. Plaintiffs then called several witnesses to testify as to conversations had with Winfield Downey for the purpose of showing that he said that the note was given for the purchase of the farm, but objection .to introduction of this testimony was sustained.

On July 6, 1939, the court made findings of fact, conclusions of law and entered judgment. The findings of fact were in part as follows:

"1. The court finds that in the amended petition of the plaintiffs, filed herein on October 10, 1938, plaintiffs sought recovery of $1,095.50 with interest thereon at 10 percent from February 3, 1938, and for costs of action and for vendor's lien upon the property of the defendant, L. J. Downey, described as the west one-half of the southwest quarter of section 25, township 16, range 23, Miami county, Kansas.

"2. That on October 21, 1938, a journal entry of judgment was entered in said cause settling the controversy between the plaintiffs and the defendant by the defendant consenting to the entry of judgment against him in the sum of $997.88, and said L. J. Downey, defendant, waiving any claims he might have had against the estate of Winfield Downey, deceased, including the specific legacy described in the will.

"3. From the preponderance of the evidence and from the pleadings on file the court finds that plaintiffs have waived any rights to a purchase-money lien upon and against the west one-half of the southwest quarter of section 25, township 16, range 23, Miami county, Kansas, owned by the defendant, L. J. Downey, and that said tract of land is exempt from execution for the satisfaction of the judgment rendered in said cause, because of the fact that the same is a homestead, and that any alleged purchase-money lien aforesaid was waived by the plaintiffs."

The judgment recited that the farm was exempt from sale to satisfy the money judgment and quashed the levy of execution.

Appellants argue that homestead exemption cannot be claimed as against a debt incurred in the purchase of property. We do not understand that the appellee contends otherwise, and certainly there can be no dispute on that question. The homestead section of the constitution (sec. 9, art. 15) provides:

". . . no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon."

This language was repeated verbatim in the homestead section of the code of civil procedure, G. S. 1935, 60-3501. The law has been laid down in a long line of decisions of this court from *Pratt v. Topeke Bank*, 12 Kan. 570, to *DeBolt v. Sharp*, 148 Kan. 298, 80 P. 2d 1054. The appellee contends that the question of whether the note represented a debt incurred in the purchase of the farm was an issue raised in the action on the note, that there was no adjudication on that issue and that whatever right the plaintiffs might have had to proceed against the farm was waived by them. Appellee also contends that the total debt which he owed to his father was about $2,400, that this debt had been reduced to less than $1,000 and that the note does not now represent the purchase debt on the farm. In any event, while the court, in quashing the levy of execution, made no finding as to whether the note was for purchase money, it did find that the "plaintiffs have waived any right to a purchase-money lien" upon the property. We are mainly concerned as to whether there was evidence to support that finding. It must be noted that the petition in the action on the note specifically recited that the note represented part of the purchase price of the farm, that the defendant was not entitled to homestead exemption thereon and that "plaintiffs are entitled to a vendor's lien upon said property for the amount due from said defendant on said note." Also, that the petition prayed for judgment "and for a vendor's lien upon said property." Appellants contend that in the agreement for judgment the only thing which they waived was inclusion of any reference to exemptions or to a lien and that they did not waive any substantive rights. The appellee says that the correspondence clearly shows that he was led to believe that in consideration of his consent to a straight money judgment and his abandonment of any claim on his father's estate the plaintiffs were waiving any right to proceed against his home-

stead on the ground that the debt was for purchase money. Certainly, unless the plaintiffs were waiving something of substance the mere omission from the judgment of reference to a lien would have had little significance to him. However, we find still stronger support in the record for appellee's contention. In the hearing on June 5, when defendant Downey was on the witness stand, this colloquy occurred:

"Q. What was the amount of the purchase price?

"Mr. Shawver: I object to that as immaterial. That matter was litigated in the lawsuit; *they waived their right to any lien.*

"The Court: Let us see.

"Mr. Shawver: They waived that in order to get judgment in that case.

"Mr. May: *That is correct.*" [Italics ours.]

It will be noted that the admission goes not merely to the omission of reference to a lien in the judgment, but to a waiver of *any lien,* which would, of course, include a judgment lien.

Appellants say that when the petition was drawn in the action on the note they were under the impression that they were entitled to a "vendor's lien" and that they agreed to omit from the judgment any reference to a "vendor's lien" because they concluded, and rightly so, that in the absence of contract for such a lien vendor's liens are not recognized in this state. (*Felzien v. Wieck,* 118 Kan. 194, 234 Pac. 944; *Bank v. Randall,* 98 Kan. 744, 160 Pac. 207.) The fact remains, however, that it was contended in the petition that the debt was for purchase money and that judgment on it would be a lien on "all of the debtor's real estate, including the homestead." Appellants cite *Greeno v. Barnard,* 18 Kan. 518, and *DeBolt v. Sharp,* supra, in support of the proposition that it would have been erroneous to insert in the judgment a declaration that the debt is a lien on the real estate and order the same sold to satisfy the debt. The cases are good upon the point, but do not reach the issue here, which is whether plaintiffs effectually waived their right to proceed against the homestead. Under the authority of *Greeno v. Barnard,* supra, and many other cases (*Tyler v. Johnson,* 47 Kan. 410, 28 Pac. 198; *Manufacturing Co. v. Haughton,* 97 Kan. 528, 155 Pac. 1078, *Bank v. Pickering,* 111 Kan. 132, 205 Pac. 1110 and others), a judgment on a debt for purchase money would be a lien—at least as between the original parties—on all the real estate of the judgment debtor, including the homestead, but the debtor would have a right to have his personal goods that are subject to the debt exhausted

first before the homestead is taken to satisfy the debt. This, however, does not mean that the creditor may not waive the lien. It is the contention of the appellee that such waiver was part of the consideration in his agreement not to contest the action.

Appellants contended that the hearing on June 12 was irregular and without notice to the plaintiffs and that the testimony given by the defendant at that time should not have been considered. Appellants say that the hearing was closed on June 5 and that there was no authority for further hearing in the proceedings in aid of execution. The record discloses, however, that at the conclusion of the hearing on June 5 attorney for the plaintiffs stated that under the law he could levy execution for payment of the purchase price of the homestead, that he thought the proper place for that to come up would be on confirmation of the sale and that he added, "I will ask the court to continue this until next motion day." The subsequent correspondence on the matter has been heretofore recited. However, we do not regard the point as of any controlling importance.

Another contention of appellants is that if the judgment taken on the note waived any right to a lien such waiver was without consideration. This argument is not persuasive. The appellee contends that he abandoned certain claims which he had or defenses he might have made in the action on the note, and that a part at least of the consideration for doing so was plaintiffs' waiver of a purchase-money lien on the homestead. The judgment itself recites his waiver of any claim against the estate. If waiver of lien was made by plaintiffs, the compromise settlement provides consideration.

The essence of the court's finding of fact, as against the plaintiffs, was that they had waived any right which they might otherwise have had to levy execution upon the farm. Whether it be called a purchase-money lien, a judgment lien or merely the right of the judgment creditor to proceed against the farm in spite of its homestead status as to other creditors, we find ample evidence to support the court's finding that a purchase-money lien had been waived and that the debtor was entitled to homestead exemption.

The judgment is affirmed.